FILED ENTERED
LODGED RECEIVED

JAN 14 2000

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOTCHIE M. KERCH, et al.,

    Plaintiffs,

vs.

EAGLE VISION HOLDINGS, INC., et al.,

    Defendants.

NO. C98-1284Z

ORDER

## I. INTRODUCTION

Plaintiffs are three persons who each entered into joint venture agreements with defendant Eagle Vision Holdings, Inc. in 1997 and 1998. With this motion they seek to represent a class of 70-150 persons who entered into similar agreements promoted by defendants Scott Walker, Wayne Nattrass, and Scott Simpson. See Dkt. # 47. Pursuant to the agreements, the named plaintiff invested between $30,000 and $100,000. According to the agreements, the money was to be invested in high-yield trading programs and backed by a bank guarantee. Plaintiffs allege that the moneys invested were not invested as described in the agreements but were instead diverted to one or more of the defendants for their own benefit. The investment scheme complained of is the subject of a civil action brought by the Securities and Exchange Commission; it also appears that some of the defendants have been indicted. Despite the large number of investors who were allegedly defrauded by the scheme, the parties have brought to the court's attention only one other civil action filed by

ORDER 1–

an investor. See Dkt. # 35 (identifying Faber, et al. v. Zappa Int'l Corp., et al., No. C99-5077 FDB (W.D. Wash. filed Feb. 5, 1999), which is not pursued as a putative class action).

In addition to Eagle Vision Holdings, Inc., Scott Walker, Wayne Nattrass and Scott Simpson, plaintiffs have also named as defendants Global Network Strategies, alleged to be a U.S. representative of Eagle Vision Holdings, Inc., and Zappa International Corp., a company allegedly controlled by Simpson and in which plaintiffs' money allegedly was to be deposited. None of these defendants has appeared.[1] Default judgments have been entered against Zappa, Walker, Nattrass and Simpson. No motion for default judgment has been filed against Eagle Vision or Global Network Strategies.

Also named as defendants are Fenmore International, an investment company, and Anwar Heidary and Robert Povey, two agents of Fenmore. These defendants (the "Fenmore defendants") are the only defendants who have appeared and the only defendants who have opposed class certification. They oppose certification insofar as they are included in the lawsuit and the class definition.

## II. ANALYSIS

### A. Class Certification Standard

In order to meets its burden in moving for class certification, plaintiffs must make a prima facie showing of each of the four certification prerequisites of Fed. R. Civ. P. 23(a) and must demonstrate that appropriate grounds for a class action exist under Rule 23(b). See Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir.1975); In re Northern Dist. of Cal. Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 854 (9th Cir.1982). Pursuant to Rule 23(a), plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

---

[1] Although Wayne Nattrass is listed on the docket as appearing pro se, he has not made an appearance.

ORDER 2–

(4) the representative parties will fairly and adequately protect the interests of the class." Id. If these requirements are met, the plaintiffs still must show that they have met one of the four grounds of Rule 23(b): (1) that the prosecution of individual actions would create a risk of inconsistent verdicts that would establish incompatible standards of conduct for defendant; (2) that adjudication of individual claims would be dispositive of the claims of non-party class members, or substantially impede the ability of non-party class members to pursue their own claims; (3) that the defendant acted or refused to act on grounds generally applicable to the class, so that declaratory or injunctive relief is appropriate with respect to the entire class; or (4) that common questions of law or fact predominate and that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)-(3).

A court should determine whether to certify a class "[a]s soon as practicable after the commencement of [the] action." Fed. R. Civ. P. 23(c)(1). Because the early resolution of the class certification question requires some degree of speculation, the court is only required to form a "reasonable judgment" on each certification requirement, considering both the allegations of the class action complaint and the submissions of the parties. Blackie, 524 F.2d at 900-01 & n.17. The court may not, however, consider the merits of plaintiffs claims in its effort to determine whether class certification is appropriate. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178 (1974).

**B.  Rule 23(a) Prerequisites**

**1.  Numerosity**

Plaintiffs propose that the class be defined as:

> All persons who invested or paid money to any of the defendants or their agents for investment in any stock, security, or other investment, including without limitation, a "Bank Debenture Trading Program" or who executed a joint venture agreement with one or more of the defendants or their agents.

The class definition is too broad insofar as investments made through Fenmore are included in the class definition when, in fact, plaintiffs complaint pertains only to investments and agreements promoted by or made with Eagle Vision Holdings, Zappa International, Scott

ORDER 3–

Walker, Wayne Nattrass, and Scott Simpson. The class definition must be altered to reflect this more narrow field of claimants. The Court tentatively defines the class as follows:

> All persons who paid money to Eagle Vision Holdings, Zappa International, Global Network Strategies or one of their associates or promoters, for investment in the "Bank Debenture Trading Program" or any other private high yield trading program during the period 1996 through 1998, excluding defendants, their affiliates, subsidiaries, family members, agents and employees.

The numerosity requirement does not demand that the class be so numerous that joinder is impossible, but rather that joinder is impractical. See Fed. R. Civ. P. 23(a)(1) (requiring that the class be "so numerous that joinder of all members is impracticable"). See also Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913 (9th Cir.1964). Plaintiffs assert that there are 70 to 150 potential class members under this definition. The class is so large that joinder is impracticable.

### 2. Common questions of law or fact

Rule 23(a)(2) requires there be "questions of law or fact common to the class." This requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." Yslava v. Hughes Aircraft Co., 845 F. Supp. 705, 712 (D. Ariz. 1993). Essentially, the common question presented here is whether defendants failed to inform plaintiffs they were investing in a Ponzi scheme. The Ninth Circuit has held:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975). The Fenmore defendants argue that because only a portion of the invested funds were invested with Fenmore International, the court will need to resolve differing questions of fact when it comes time to trace the funds

invested. Should the need arise during the course of the lawsuit, however, subclasses may be created for the purposes of allocation of recovered funds.

### 3. Typicality

The typicality requirement insures that "the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. Plaintiffs have satisfied the typicality requirement.

### 4. Adequacy of representation

There are two criteria for assessing the adequacy of representation: "First, the named representative must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). As to the first criterion, there has been no suggestion that plaintiffs' counsel is not qualified to prosecute this action. Plaintiffs' counsel has represented that it has been class counsel in a number of cases in both federal and state courts. The Fenmore defendants argue that the varying disposition of investors' funds creates a conflict of interest. Should funds be recovered from one source, they argue, those funds would be remunerated only to the class members whose investments they represent, causing a conflict with other class members. As discussed, supra § II.B.1, should a conflict arise, subclasses may be created to allocate recovered funds. See Fed. R. Civ. P. 23(c)(4). "Here, the conflict, if any, is peripheral, and substantially outweighed by the class members' common interests" in proving that defendants misrepresented the nature of the investment scheme. Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975).

C.   **Rule 23(b) Grounds**

In addition to satisfying the prerequisites of Rule 23(a), plaintiff must satisfy one of the requirements of Rule 23(b) to show that appropriate grounds for maintaining a class action exist. Plaintiffs' argument that the action may be certified under Rule 23(b)(1)(A) is quickly disposed of: contrary to plaintiffs' suggestion, it is not enough that "defendants might be held liable in some actions but not in others." McDonnell-Douglas Corp. v. United States Dist. Court, 523 F.2d 1083, 1086 (9th Cir.1975). Neither do plaintiffs satisfy the requirement of Rule 23(b)(1)(B), as the adjudication of individual claims would have no effect on the claims of non-party class members. Plaintiffs also have failed to show that damages are not the predominant remedy they seek; certification under Rule 23(b)(2) is therefore not appropriate. See Probe v. State Teachers' Retirement Sys., 780 F.2d 776, 780-81 (9th Cir.1986).

Certification is appropriate under Rule 23(b)(3), however. See Fed. R. Civ. P. 23(b)(3) (requiring that common questions of law or fact predominate and a showing of the superiority of the class method). Plaintiffs have shown that the common question of the failure to accurately represent the nature of the investment scheme predominates. The Fenmore defendants contend, however, that the S.E.C. enforcement action or individual lawsuits are superior to other methods for the adjudication of the putative class members' claims. Pertinent to the superiority determination are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). All factors weigh in favor of class certification.

ORDER  6–

First, the Fenmore defendants assert that because each putative class member has a claim in the tens of thousands of dollars, each class member would necessarily want to control the prosecution of the action. However, the opt out provision of Rule 23(c)(2) satisfies that concern. Second, only one other action has been commenced by a member of the class. Third, the Fenmore defendants argue that this forum is an undesirable forum, in that the records of Zappa, as well as some of the defendants, are in Wyoming or Texas. Nonetheless, the named plaintiffs, as well some of the defendants, are in this forum, making this forum no less desirable than Wyoming or Texas. Finally, the Fenmore defendants argue that the class is unmanageable because Zappa has defaulted, making access to its records difficult. However, this factor does not make maintenance of the class action unmanageable; it makes prosecution of any claim – by the class or by an individual plaintiff – more difficult.

## III. CONCLUSION

For the reasons stated, plaintiffs' motion for class certification (Dkt. #47) is GRANTED, subject to the modification of the class definition noted in Section II.B.1. Objections to the tentative class definition must be filed within twenty days of the date of this Order.

IT IS SO ORDERED.

DATED this 14th day of January, 2000.

THOMAS S. ZILLY
UNITED STATES DISTRICT JUDGE

ORDER 7–