FILED _____ ENTERED
_____ LODGED _____ RECEIVED

AUG 23 2001   KN

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

CV 98-01284 #00000103

Honorable Thomas Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOTCHIE KERCH, GERROL ADKINS and PAD FINNIGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>EAGLE VISION HOLDINGS, INC., a Belize corporation, FENMORE INTERNATIONAL, an Ontario Partnership, GLOBAL NETWORK STRATEGIES, A United States Representative of Eagle Vision Holdings, Inc.; ZAPPA INTERNATIONAL CORPORATION, a Texas Corporation; ANWAR HEIDARY, an individual, SCOTT WALKER, an individual; WAYNE NATTRASS, an individual, ROBERT | No.: C98-1284Z<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY JUDGMENT |

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY
JUDGMENT
Page 1 of 22

c \documents\brad\finnigan\final sj and default brief doc

BRADFORD G. MOORE
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

ORIGINAL

1  POVEY, an individual; and SCOTT L
   SIMPSON, an individual,

2

                 Defendants.
3

4      Plaintiffs  Pad  Finnigan,  Lotchie  Kerch  and  Gerroll  Adkins,  both

5  individually and on behalf of a class of persons similarly situated, move for

   default and summary judgment pursuant to FRCP Rule 56(a), or alternatively,
6
   for default and summary adjudication pursuant to FRCP Rule 56(d), against
7
   defendants   Anwar   Mohamed   Heidary,   Robert   Povey,   and   Fenmore

8  International corporation. Pursuant to this Court's Order, the

   answer of these defendants has been stricken; none of these defendants
9
   opposes any of the claims made by plaintiffs.  Summary judgment and/or
10
   summary adjudication is appropriate as to the particularized federal Racketeer

11  Influenced and Corrupt Organizations Act of 1970 ["RICO"][Title 18 USC §1961

12  *et. seq* ] issues identified in the motion inasmuch as the defendants and each

   of them have failed to appear and/or otherwise defend in this action
12

13
   **1. Factual Background**
14

15      Plaintiffs   instituted   this   action   against   the   above-named

16  defendants, including Povey, Heidary and Fenmore International Ltd.,

   (hereinafter collectively referred to as the 'Fenmore defendants') all foreign
16
   defendants, alleging not only misrepresentations of material facts made
17
   by co-defendants[1] Zappa International Corporation, Eagle Vision Holding
18

19
   _____

20  [1] Plaintiffs  previously  obtained  entry  of  defaults  against  some  of  the  named
   defendants. Subsequent investigation reveals that the Securities and Exchange
21  Commission was criminally prosecuting most of those defendants

23  c \documents\brad\finnigan\final sj and default brief doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

24

Inc., Wayne Nattrass, and Scott L. Simpson, but also misrepresentations by the Fenmore defendants. Plaintiffs also alleged a conspiracy by all defendants to defraud plaintiffs. The evidence shows that the Plaintiffs are victims of an elaborately designed and technically implemented complex prime bank guarantee program ["Program"]. Defendants Scott L. Simpson and Zappa International Ltd., solicited each plaintiff by use of federal mails and/or federal interstate wires in 1997 and 1998, to subscribe to the Program. The Program represented returns of 120% to 200%, and that the Program was guaranteed. The Program was described in documents that were sent to plaintiffs across interstate lines. Scott and Zappa used interstate mails and/or wires to promote the Program to the plaintiffs. The plaintiffs executed documents subscribing to the Program. As the Court has limited the class definition, the class consists of those individuals who invested in this high-yield program through defendant Zappa International, Eagle Vision Holding, or one of the representatives or promoters of these entities. Each of the plaintiffs were told monies received from them would be returned in the event that a trade did not materialize and that plaintiffs would receive a large return on their investments. Plaintiffs also had discussions with Scott Simpson of Zappa International and Wayne Nattrass prior to investing their funds. All of the named plaintiffs received communications directly from Mr. Heidary and/or Mr. Povey. Simpson, Walker, Nattrass and Zappa were the primary persons the plaintiffs dealt with. Plaintiffs at that time were

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

1
2
unaware of the existence of Anwar Heidary, Robert Povey, and Fenmore International, Ltd.

3
4
5
6
7
8
Beginning in 1998, plaintiffs contacted Simpson by telephone and inquired as to when they, would begin receiving disbursements under the Program, as represented. Simpson began offering a continual stream of explanations, by telephone, as to reasons why disbursements were not forthcoming. In early May, 1998, Simpson began sending letters to plaintiffs that he had received from Anwar Heidary, Robert Povey, and Fenmore International, Ltd.

9
10
11
12
13
14
15
16
17
18
19
20
21
The information provided to the plaintiffs represented that the Bank Trading Program was part of a program established under the Bretton Woods Conference, that the Program was guaranteed by the Top 250 World Banks, that the return on investment would receive capital gains treatment under the United States Tax Code and that the Program was endorsed by the International Chamber of Commerce.  Plaintiffs were also advised that there was no risk in investing in the Program. Plaintiff Kerch invested $35,000.00 in the program; Plaintiff Finnigan invested $50,000.00 in the program and Plaintiff Adkins invested $100,000.00 in the program.  The evidence now before the Court shows that, in all, class members 'invested' a total of $4.5 million, none of which was invested, and none of which has been repaid or returned to class members. All of the plaintiffs' funds were sent via wire transfers. On or about 11/30/97, Plaintiff Kerch executed a joint venture agreement that was the agreement through which she invested her funds    All class members

22
23
MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY JUDGMENT
Page 4 of 22

c \documents\brad\finnigan\final sj and default brief doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

24

1

2   executed similar agreements through which their funds were invested.
    True and accurate copies of the joint venture agreements are attached to
3   Plaintiffs complaint on file herein.

4        These instruments evidence plaintiffs' participation in the described
5   program.   Thereafter, the plaintiffs, and each of them subsequently
    transmitted, via wire transmission, investments from the plaintiffs' own
6   bank accounts, to defendants.  That wire fund transfer was motivated by
7   defendants' representations that the funds would be deposited in a
8   "Special private Placement Program".

9        The Joint Venture Agreements provide that plaintiffs would function
10  as "Participants," and that Eagle would act as "Agent" for Zappa, the
    "Administrator."   The object of the Agreement was to provide financial
11  planning advice to plaintiffs regarding their individual investment.   The
12  Agreement further represented that funds would be guaranteed by 25
13  western European Bank guarantees.   The Agreement also represented
14  that plaintiffs would inure a 200% return profit plus a return of their
15  original investment at the end of the 120-day participation program term.
    Throughout the investment period, plaintiffs received regular letters
16  authored by defendant Povey and Heidary on behalf of Fenmore that the
17  release of plaintiffs' funds was delayed.   The letters described efforts to
18  secure liquid funds for distribution to program participants such as
19  plaintiffs.  The letters were directed to plaintiffs by defendants to conceal
20  the fact that no liquid capital would be forthcoming and the intent of

21

22  MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY
    JUDGMENT
    Page 5 of 22

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

23  c \documents\brad\finnigan\final sj and default brief doc

24

those letters was to delay the plaintiffs from taking any further action and to give them a false sense of security

Since the withdrawal of counsel for defendants Heidary, Povey and Fenmore, this Court has stricken their Answer and they are now accordingly in default. Judgment should be entered.

The plaintiffs never received the return of their contributions. Subsequently, through investigative efforts, plaintiffs learned that Simpson and Zappa had wired monies, including plaintiffs' monies, from Zappa to Fenmore, and/or any other person or entity designated by Anwar Heidary. Those documents confirm the fact that Heidary, Povey, and Fenmore, were acting in concert with Simpson and Zappa, who had raised monies for the Program.

Plaintiffs instituted this federal RICO action, alleging that Anwar Heidary, Meta Heidary, Robert Povey, Fenmore International, and Antaglobal engaged in racketeering activity with Simpson, Zappa, Nattrass, Carroll, Leavitt, and Johnson in connection with soliciting plaintiffs and other victims to contribute to the Program.

Two other RICO actions were filed in this federal district against most of these defendants for offering prime bank guarantee programs. *Van Noy v. Heidary, et al*, U.S.D.C. W.D. Wash., Civ No.. 00-1667-C and *Faber v. Zappa International Ltd., et.al.*, U.S.D.C. W.D. Wash., Civ No.: 99-5077.

The action asserts that Anwar Heidary, Robert Povey, and Fenmore International, conspired and/or aided and abetted each other, and the

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY
JUDGMENT
Page 6 of 22

c \documents\brad\finnigan\final sj and default brief doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

1
2
3

other defendants in connection with not only raising monies but also concealing from detection the underlying nature of the scheme to defraud the plaintiffs and other victims.

4
5
6

The evidence supporting the motion for summary judgment, or alternatively, motion for summary adjudication, establishes both RICO substantive and conspiratorial liability. For the reasons set forth herein, plaintiffs' motion should be granted and judgment entered thereon.

7
8

## 2. Summary Judgment

9
10
11

Under Rule 56(c), summary judgment is appropriate if the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

12
13
14
15

The Ninth Circuit stated the federal summary judgment standard in the context of RICO actions in *California Architectural Bldg. Products, Inc., v. Franciscan Ceramics*, 818 F.2d 1466 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1987):

16
17
18
19
20
21

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party bears the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U .S. 317, 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

22
23
24

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY JUDGMENT
Page 7 of 22

c:\documents\brad\finnigan\final sj and default brief.doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

1
2
3
4
5
6
7
8
9

Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by finder of fact they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505,2511,91 L.Ed.2d 202 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,106 S. Ct. 1348,89 L.Ed.2d 538 (1986). No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment. 818 F.2d at 1468. *See* Brunet, Redish, and Reiter, *Summary Judgment. Federal Law and Practice*, Trial Practice Series, § 6.15 Summary Judgment in Civil RICO Cases.

10
11

Plaintiffs' evidence offered in support of the summary judgment motion warrants granting the motion and entry of judgment, as analyzed hereinafter

12

13

## 3.   RICO'S Expansive Statutory Provisions and Mandated Liberal Construction Compel Its Application to Plaintiffs' Claims

14
15
16
17

RICO's purpose is "the imposition of . . . new civil sanction to provide new legal remedies for all types of organized criminal behavior, that is, enterprise criminality -- from simple political corruption to sophisticated white-collar crime schemes to traditional Mafia-type endeavors"[2] Given the RICO

18

19
20
21

[2] *See United States v. Cauble*, 706 F.2d 1322,1330 (5th Cir. 1983), (footnote and citation omitted), cert denied, 465 U S 1005 '1984). The Supreme Court agrees that "RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime " *Sedima, S P R L v. Imrex Co.*, 473 U S 479 (1985)(citing *Russello v United States*, 464 U S 16,26-29 (1983), *see also United States v Turkette*, 452 U S 576, 591 (1981)

22

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

23

c \documents\brad\finnigan\final sj and default brief doc

24

1  complaint's allegations, no sharp pencil analysis is required to apply it to

2  defendants' fraudulent scheme.[3] No defendant is immune from its penalties,[4]

3

4  _____

5  [3] RICO applies to all types of fraud, including commercial contract disputes, *see*

6  *Sedima*, 473 U.S. at 499-500 (civil RICO action could be premised on commercial contract dispute involving federal mail and wire fraud contentions).

7  The Ninth Circuit has liberally construed RICO, Section 1964(c), and the RICO

8  Liberal Construction Clause  See, *Ticor Title Ins. Co  v  Florida*, 937 F 2d447, 450-51 (9th Cir  1991) (title insurance scheme), *Allwaste, Inc , v  Hecht*, 65 F 3d 1523, 1530 (9th Cir  1995) (continuity of bribery , kick back campaign not required to exceed

9  twelve months to satisfy continuity prong of *Sedima*), *Webster v. Omninutrition Int'l, Inc.*, 79 F .3d 776, 786- 787 (9th Cir.), *cert. denied*, 117 S.Ct  174 (1996) (intra

10  corporate conspiracy recognized under RICO Section 1962(d)); *United States v Feldman*, 853 F 2d 648,655-60 (9th Cir. 1988) (arson scam), *cert. denied*, 489 U .S.

11  1030 (1989), *Beneficial Standard Life Ins  Co. v. Madariaga*, 851 F.2d 271 (9th Cir. 1988) (insurance fraud), *Brady v  Dairy Fresh Products, Co.*, 974 F.2d 1149,1152-55

12  (9th Cir. 1992) (tax shelter fraud); *Ikuno v. Yip*, 912 F .2d 306, 309-11 (9th Cir . 1990) (commodities fraud); *Blake v. Dierdorfl*, 856 F.2d 1356,1368-72 (91h Cr

13  1988) (Leavy, J ) (corporate securities fraud), *United States v. Kirk*, 844 F .2d 660, 663-64 (9th Cir. ) (time-share fraud), *cert. denied*, 488 U.S. 890 (1988), *United Energy Owners Comm., Inc. v  United States Energy Management Systems, Inc.*, 837

14  F.2d 356,360-64 (9th Cir. 1988) (tax shelter fraud); *Wilcox v. First Interstate Bank*, 815 F 2d 522,528-32 (9th Cir  1987) (prime rate fraud), *Simon Oil Co  v. Norman*,

15  789 F.2d 780,781 (9th Cir  1986) (limited partnership fraud), *United States v Benny*, 786 F 2d 1410,1416-16 (9th Cir ) (scheme to defraud lenders), *cert. denied*,

16  479 U S  1017 (1986), *SunSav  & Loan Ass'n v  Dierdorff*, 825 F 2d 187,191-96 (9th Cir. 1987) (thrift looting); *Miller v. Glen & Helen Aircraft, Inc ,* 777 F  2d 496,498-99 (9th Cir . 1985) (conspiracy to intimidate witnesses from testifying freely).

17  [4] RICO's broad net of liability is undisputed·

18
     "The substantive provisions of the RICO statute apply to insiders and
19   outsiders -those merely "associated with" an enterprise -- who
     participate directly and indirectly in the enterprise's affairs through a
20   pattern of racketeering activity. Thus, the RICO net is woven tightly to
     trap even the smallest fish, those peripherally involved with the
21   enterprise."

22
**BRADFORD G. MOORE**
                                                        ATTORNEY AT LAW
                                                    9 LAKE BELLEVUE DRIVE, #210
                                                        BELLEVUE, WA 98005
23  c \documents\brad\finnigan\final sj and default brief doc        (425) 453-8161
                                                        FAX  (425) 646-7769

24

1  no matter what their alleged pedigree or purported community[5] stature.[6]

2  Expansive language deliberately employed by Congress when drafting RICO,

3

4

5

6  *United States v. Elliott*, 571 F.2d 880,903 (5th Cir ) (emphasis in original, citations omitted), *cert denied*, 439 U S. 953 (1978)(cited with approval in *United States v. Tille*, 729 F.2d 615,620 (9th Cir.), *cert. denied*, 469 U.S. 845 (1984. Clearly, RICO applies to the various entity and individual defendants who participated or assisted in conduct of the associational in fact RICO enterprises *See In re American Continental Corporation/Lincoln Savings and Loan Association*, 794 F Supp at 1424, 1464-1465 (D Ariz 1992).

7

8

9  [5] Professor G  Robert Blakey of Notre Dame law School, speaking before the Symposium  Law and the Continuing Enterprise  Perspectives on RICO in 1990 at the debate and discussion "What's Next?  The Future of RICO," stated it succinctly as to the application of RICO·

10

11

12  "RICO says "any person -- not any person whose named happened to end with a -- vowel -- not any person whose collar happened to be blue -- RICO applies to anyone I with a white collar -- or a blue collar -- or no collar at all -- or -- let me go further and take this example of anti-abortionists who demonstrate -- people whose collars are turned around. It makes no difference if you walk in a doctor's office whether your name is O'Neill or Corleone: if you engage in a pattern of extortion against the good doctor, RICO applies to you. No inculpation for Italians and no exculpation for Catholics "

13

14

15

16

17  Vol 65, No.5, Symposium. Law and the Continuing Enterprise. Perspectives on RICO, Notre Dame Law Review, 1990, p  1080

18

19  [6] See H J  492 U .S  at 248-49 ("Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many ways."), *Sedima*, 473 U.S at 499 (observing that "Congress wanted to reach both 'legitimate' and 'illegitimate' enterprise" and that '[t]he former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences") (*citing Turkette*, 452 U .S. at 586-87)

20

21

22

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

23  c \documents\brad\finnigan\final sj and default brief doc

24

1
2

and Section 1962 in particular,[7] and the mandated RICO Liberal Construction,[8] compel its application here to provide a remedy to plaintiff.

3

---

4
5
6
7
8
9
10
11
12

[7] Section 1962 renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an "enterprise" engaged in interstate oar foreign commerce, Section 1962(a), who acquires an interest in or control of such an enterprise "though a pattern of racketeering activity," Section 1962(b), who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," Section 1962( c ); or, finally, who conspires to contravene the first three subsections, Section 1962(d). See H.J, 492 U.S. at 232-33 House and Senate Reports accompanying RICO state that Section 1962(c)'s prohibitions are without limitation or exception. See Organized Crime Control Act of 1969, S. Rep. No.617, 91st Cong., 1st Sess. 159 (1969) (Section 1962(c) applies to any "conduct of the enterprise through the prohibited pattern"; "there is no limitation on the prohibition"); H.R. Rep. No 1549, 91st Cong., 2d Sess. 4033 (1970) (same). See Russello, 464 U.S at 21-22 (calling "participate" and other RICO definitions "concepts of breadth"); Haroco, Inc v American Nat'l Bank & Trust Co., 747 F.2d 384,398 (7th Cir. 1984) ("conduct" and "participate" are broad terms which would defy judicial confinement"), aff'd on other grounds per curiam, 473 U.S. 606 (1985)

13
14

[8] RICO "shall be liberally construed to effectuate its remedial purposes. " 84 Stat 941 (1970). As emphasized in Russello, 464 U S at 27, RICO is the "only substantive federal criminal statute that contains such a directive," and as subsequently elaborated

15
16
17
18

> "RICO is to be read broadly This is the lesson not only of Congress' self consciously expansive language and overall approach, but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes." Pub. L. 91-452, Section 904(a), 84 Stat 947. The statute's remedial purpose" are nowhere more evident than in the provision of a private action for those injured by racketeering activity "

Sedima, 473 U S at 497-98 (citations omitted).

19
20
21

The Supreme Court has repeatedly applied the Liberal Construction Clause in civil and criminal RICO cases, see e g , Tafflin v Levin, 493 U S 455,467 (1980)(concurrent jurisdiction applies), H J , 492 U S. at 248-49 (declining to require multiple fraudulent schemes to establish pattern of racketeering activity). See also Brady, 974 F .2d at 1153 (recognizing applicability of respondeat superior

22
23

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY
JUDGMENT
Page 11 of 22

c \documents\brad\finnigan\final sj and default brief doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

24

1   Defendants' efforts to severely delimit and restrict this broad RICO application

2   are negated by Congressional mandate and Supreme Court[9] construction

3   rejecting such attempts that are inconsistent with its statutory language

4   and/or legislative history.[10]   Plaintiffs' RICO claims should be accorded federal

5   summary judgment relief

6

7   _____

8   and agency theories of liability because "[t]his approach is consistent with the
Supreme Court's admonition that RICO's civil provisions are to be construed
liberally")

9   [9] *See National Organization of Women, Inc. v. Scheidler*, 510 U.S 249,114 S.Ct. 798,

10   127 L.Ed.2d 99 (1994)(RICO action alleging conspiracy to shut down abortion
clinics held maintainable without proof of economic motive, if alleged conspirators
conducted RICO racketeering enterprise; "an enterprise surely can have a

11   detrimental influence on interstate or foreign commerce without having its own
profit-seeking motives " 127 L Ed. at 109)

12

13   [10] In *Sedima*, the Court rejected the argument that a private civil action under
Section 1964(c) can proceed only against a defendant who has already been
criminally convicted of a predicate act, or of a RICO violation, as well as the

14   argument that a plaintiff must establish a "racketeering injury," as opposed to
merely an injury resulting from predicates 473 U.S. at 493, 495  In *H J*, the Court

15   held that "to prove a pattern of racketeering activity a plaintiff or prosecutor must
show that the racketeering predicates are related, and that they amount to or pose

16   a *threat* of continued criminal activity," 492 U S at 239 (emphasis in original),
rejecting the argument that a single fraudulent effort or scheme is insufficient to

17   establish requisite continuity. In 1992, the Court held that RICO's civil remedies
provision has a proximate cause element. *See Holmes v. Securities Investor
Protection Corp.*, 112 S.Ct. 1311, 1319-21 (1992); however, this decision cannot be

18   taken as a license to impose judicial limitations that are inconsistent with the
statute's text or legislative history; indeed, while the five-justice majority in *Holmes*

19   declined to address whether every RICO plaintiff who alleges securities fraud as a
predicate offense must have purchased or sold a security, *see id* at 1321-22, four

20   justices (in two separate concurring opinions) would have addressed that question
and answered it in the negative, thereby declining to impose an additional standing

21   barrier to civil RICO actions  *See id* at 1322-23 (O'Connor, J .,joined by White &
Stevens, JJ ., concurring), and id. at 1327 (Scalia, J , concurring).

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

23   c \documents\brad\finnigan\final sj and default brief doc

24

## A. RICO Enterprises Are Sufficiently Pleaded for RICO Section 1962(c)

U.S.C. § 1962 provides in pertinent part:

(a) It shall be unlawful for any person who has **received any income derived, directly or indirectly, from a pattern of racketeering activity** or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

****

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The evidence reveals that Anwar Heidary and Robert Povey operated, managed, and directed the affairs of Fenmore and Zappa. Each entity is a RICO enterprise as well as forming an association-in-fact enterprise.

A review of Ninth Circuit RICO law supports plaintiffs' contentions that the RICO pattern of racketeering activity is separate and distinct from the RICO enterprise in the Section 1962(c) claim context against defendants. The substantive RICO fraud claim is pleaded sufficiently inasmuch as defendants, and other co-defendants, are alleged to be associated with or employed by the various RICO association-in-fact enterprises, and that these enterprises are separate and distinct from the pattern of racketeering activity . The RICO enterprise allegations comport

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

with *Chang v. Chen*, 80 F .3d 1293 (91h Cir. 1996). *Chang* embraced claims advanced by plaintiffs arising from three distinct fraudulent real property transactions as well as numerous similar transactions involving other victims. The plaintiffs advanced RICO claims under both Section 1962(c) and Section 1962(d). In dismissing the complaint, the federal district court concluded that the RICO claims were insufficient by failure of alleging a cognizable RICO enterprise, and similarly failed to sufficiently allege the commission of two predicate acts.

Affirming, the Ninth Circuit reviewed *United States v. Turkette*, 452 U.S. 576 (1981) which approved the recognition of an association-in-fact enterprise. The court opined that *Turkette* did not specify how much structure an organization must have to be an enterprise under RICO. The court similarly noted that *Turkette* has been construed restrictively by the Third, Fourth, Fifth, Seventh, Eighth, and Tenth Circuits, requiring that a RICO enterprise have an ascertainable structure separate and distinct from that of the RICO pattern of racketeering activity, concluding that a liberal construction of the "enterprise" term would nullify the enterprise/pattern elements indistinguishable.

The *Chang* court recognized that the Ninth Circuit had previously eschewed addressing the issue, noting that the federal district courts within its ambit have been fairly consistent in applying the majority interpretation to determine whether a RICO enterprise existed. By joining the majority position, the court expressed that to do otherwise would effectively render the enterprise element superfluous because under that

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

view, every pattern of racketeering activity becomes an enterprise whose affairs are conducted through a pattern of racketeering activity.

The Ninth Circuit similarly agreed that adopting the minority position would strip RICO of its focus on organized criminal activities by ignoring the organizational nexus at the heart of the RICO scheme. Also, the panel found that if merely proof of conspiracy were necessary to satisfy Section 1962(c), Section 1962(d), the RICO conspiratorial provision, would be rendered redundant. *Chang's* restrictive application has come under recent fire by the federal courts. In *Dumas v. Major League Baseball Properties, Inc.*, 52 F.Supp.2d 1170 (S.D. Calif. 1999), the court denied defendants' dismissal motions directed at the RICO claims, finding the RICO enterprise and RICO pattern of racketeering activity elements sufficiently pleaded, and mollifying the austere application of *Chang*:

> The rationale behind *Chang's* holding lay in a concern that, absent allegations of a separate entity with a decision making structure, § 1962(c)'s "enterprise" element would be rendered superfluous. *Id.* at 1299. If *Chang* were the only case on this matter, the Licensors would appear to have a conclusive argument However, the case law on this matter is not so simply categorized. Indeed, *Chang* itself is a peculiar case in that the court reaffirmed the Ninth Circuit's rule put forth in *United States v. Feldman*, 853 F .2d 648,660 (9th Cir.1988), that "involvement of a corporation which has an existence separate from its participation in the racketeering activity can satisfy the enterprise element's requirement of a separate structure. " *Chang*, 80 F 3d at 1300. However, *Chang* sidesteps this holding by finding that the corporation alleged to be part of the association-in-fact, "played no role whatsoever, legal or fraudulent, in the operations of the alleged enterprise." *Id.* at

BRADFORD G. MOORE
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

1301   Furthermore, *Chang* is a case in which the plaintiff apparently did not even include the corporation as a defendant

Clearly, those are not the facts in the instant matter. Casting doubt on the utility of *Chang*, one treatise reads: "Unless the court overrules Feldman, it will be very easy for plaintiffs to avoid the same pleading mistake in the future. Thus, it remains to be seen whether *Chang* results in any significant tightening of the Ninth Circuit's definition of an association in fact." David B. Smith and Terrance G. Reed, *Civil RICO*, '3.06, p. 3-64 (Matthew Bender 1998). Here, Plaintiffs have not repeated the mistake of the plaintiff in Chang.

\*\*\*

Next, Plaintiffs rebut the alleged deficiencies in the Complaint regarding the supposed lack of distinction between the association-in-fact enterprises and the pattern of racketeering activity. Plaintiffs argue that because each of the Licensors is a corporation, it is sufficient of itself to give an enterprise structure apart from the racketeering activity, citing *Webster v Omnitron Int'l*, 79 F .3d 776, 786 (9th Cir.1996) ("The participation of a corporation in a racketeering scheme is sufficient, of itself, to give the enterprise a structure separate from the racketeering activity. 'corporate entities have a legal existence separate from their participation in the racketeering, and the very existence of a corporation meets the requirement for a separate structure.") and *United States v Kirk*, 844 F 2d 660, 664 (9th Cir 1988)("[T]he existence of a corporation fulfills the requirements of an ascertainable structure apart from the predicate racketeering activity.")

*Webster* involved civil RICO allegations against corporate participants in a "multi-level marketing," or "pyramid," scheme. One defendant argued that the plaintiff "must show the existence of an ascertainable structure of the enterprise apart from the alleged racketeering activity (i.e. the operation of a pyramid scheme)." The rejected this argument: "The

BRADFORD G. MOORE
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

participation of a corporation in a racketeering scheme is sufficient, of itself, to give the enterprise a structure separate from the racketeering activity: "corporate entities ha[ve] a legal existence separate from their participation in the racketeering, and the very existence of a corporation meets the requirement for a separate structure," 79 F.3d at 786 (citation omitted).

However, such doubts aside, this Court is constrained to follow Ninth Circuit case authority. In light of holdings of *Feldman* and *Kirk* that mere inclusion of a corporation as a defendant satisfies the separate existence requirement and because this cannot fit into the peculiar box of *Chang* (which of course, reaffirmed *Feldman*), the Court finds Plaintiffs have sufficiently alleged associations-in-fact. Perhaps only this much can be said: "Since the separate existence inquiry belongs to the realm of medieval scholasticism this view is as valid as any other." Civil RICO, *supra*, 3.06, p 3-62. 52

F.Supp.2d at 1176-1178.

Based on the recognized tension between *Chang* and the other Ninth Circuit decisions cited by *Dumas*, plaintiffs' evidence establishes the existence of RICO enterprises to satisfy the requirements and holding of *Chang*.

**B.  Plaintiffs Have Established Evidence Sufficient To Be Entitled to Judgment on RICO Claims Premised Upon Respondeat Superior**

Plaintiffs' evidence establishes that Fenmore and Zappa derived a benefit arising from the racketeering activities of Anwar Heidary and Robert Povey. The latter defendants' conduct suffices to establish respondeat superior liability as a matter of law. The Ninth Circuit affirmatively ruled in *Brady v. Dairy Fresh Products* Co, 974 F.2d 1149

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY JUDGMENT
Page 17 of 22

c \documents\brad\finnigan\final sj and default brief doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

1

2

3

4

5

6

(9th Cir. 1992), that respondeat superior and principal/agent doctrines applied in RICO claims prosecuted pursuant to Sections 1962(a) and 1962(b). *Brady* embraced multiple RICO and federal securities fraud claims asserted by disgruntled investor participants in numerous tax shelter limited partnership investment vehicles that soured. The federal district court granted defendants' motion for summary judgment on the RICO claims, ruling derivative liability inappropriate.

7

8

9

10

11

12

13

14

15

The Ninth Circuit reversed. Examining decisional law espoused by those federal circuits previously addressing the derivative liability issue, *the appellate court found agency and respondeat superior principles both* appropriate and applicable under RICO. Accentuating the position that the rapidly evolving commercial world encouraged the adroitness of persons to promote business ventures through innovative measures as well as to structure a paradigm to immunize or otherwise restrict their direct participatory involvement, the appellate court correctly determined that derivative liability further exemplified Congress' intention of eradicating those activities proscribed under RICO:

16

17

18

19

20

21

> The doctrine of respondeat superior "can probably be best explained as an outgrowth of the sentiment that it would be unjust to permit an employer to gain from the intelligent cooperation of others without being responsible for the mistakes, the errors of judgment and the frailties of those working under his direction and for those working under his direction and for his benefit." *Petro-Tech, Inc. v. Western Co. of North American*, 824 F.2d 1349, 1358 (3d Cir.1987)(Petro-Tech) (internal quotations omitted). Respondeat superior liability also provides employers with an incentive to monitor

22

23

24

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY JUDGMENT
Page 18 of 22

c \documents\brad\finnigan\final sj and default brief doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX  (425) 646-7769

1  employees with an incentive to monitor employees and deter wrongful conduct.

2  The Ninth Circuit then examined RICO derivative liability under

3  Section 1962(c), requiring the recognition of a strict "person"\"enterprise"

4  distinctiveness:

5
6  We hold that an employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency when the
7  employer is distinct from the enterprise. Corporations and other employers that have benefited from their employees or
8  agents' RICO violations will be forced to compensate the victim of racketeering activity. Respondeat superior and
9  agency liability will encourage employers to monitor more closely the activities of their employees and agents to ensure
10  that these agents are not involved in racketeering activities. Thus, respondent superior and agency liability furthers both
11  the compensatory and deterrent goals of the RICO statute. *See PetroTech*, 824 F.2d at 1357-58; *Sedima*, 473 U.S. at 493,
12  105 S.Ct. at 3283.

13  974 F.2d at 1155.

14
15  In *Yellow Bus Lines*, a union president received a letter from the
16  president of a bus company which contained allegations that union
17  members had committed violent acts; there was no evidence "to indicate
18  that the union took action to investigate the allegations or to curb any
    excesses" of the strikers. The D.C. Circuit court held that from the
19  union's "apparent lack of concern with the violence brought to its
20  attention, the jury plausibly could conclude that the [Union] 'knowingly
21  tolerated' this state of affairs. No more is required to support a finding of
    ratification. " *Yellow Bus Lines, Inc. v. Local Union* 639, 883 F .2d 132,

22  MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY JUDGMENT
    Page 19 of 22
23  c \documents\brad\finnigan\final sj and default brief doc

24

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

136. RICO derivative liability is appropriate, premised on *Brady*, in these proceedings.

### C. Plaintiffs Have Established RICO Conspiracy Liability.

Pursuant to Washington State statutes, Plaintiffs' have also shown liability.  RCW 21.20.430(1) provides: "Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010 or 21.20.140 through 21.20.230, is liable to the person buying the security from him or her...." The Washington Supreme Court has rejected the contention that this language imposes liability only on the literal seller of a security who passes title directly to the plaintiff. *See Haberman v. WPPSS*, 109 Wn.2d 107, 744 P.2d 1032, 1051 (1987) In *Haberman*, the Washington Supreme Court concluded that the substantial factor-proximate cause definition of seller prevailing in the federal circuits provides the best guidance for our analysis of seller liability under RCW 21.20 430(1). As the court noted in *Wade v. Skipper's, Inc.*, 915 F.2d 1324, 1327 (1990): "this conclusion is also in accord with the views expressed in the official comments to the recently revised Uniform Securities Act of 1985.... [which] states that under this section, 'liability may be imposed on a person in addition to the immediate seller if the person's participation was a substantial contributive factor in the violation."

Notably a Seller for purposes of 15 U S C.A. § 77l (1) which imposes liability on any person who offers or sells security in violation of 15 U S C.A. § 77e which forbids offer or sale of unregistered securities in interstate commerce, unless securities are exempt from registration includes not only persons who transfer title, but also participants whose acts are both necessary to and substantial factor in sales transaction. Securities Act of

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY JUDGMENT
Page 20 of 22

c \documents\brad\finnigan\final sj and default brief doc

**BRADFORD G. MOORE**
ATTORNEY AT LAW
9 LAKE BELLEVUE DRIVE, #210
BELLEVUE, WA 98005
(425) 453-8161
FAX (425) 646-7769

1   1933, §§ 5, 12(1), 15 U.S.C.A. §§ 77e, 77l (1).

2       Additionally, the term "seller" for purposes of Section 12 includes

3   not only persons who transfer title, but also "participants" whose acts are

    "both necessary to and a substantial factor in the sales transaction." "The

4   test is whether the injury to the plaintiff flowed directly and proximately

5   from the actions of the defendant." *Admiralty Fund v. Jones,* 677 F.2d

6   1289, 1294 (9th Cir.1982)   Based on the evidence, Plaintiffs are entitled

    to entry of summary judgment against defendants.

7

8   **H. CONCLUSION**

9       For the foregoing reasons, Plaintiffs respectfully request that the

10  Court enter judgment against defendants Heidary, Povey, and Fenmore,

11  in the amount of the total collected from class members - $4.5 million,

12  and that the Court apply the exemplary and damage trebling provisions of

    RICO.

13      Respectfully submitted this _30_ day of July, 2001.

14

15

16                                              _____

17                                              Bradford G. Moore
                                                Attorney for Plaintiffs
                                                WSBA #7707
18

19

20

21

22  MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT AND SUMMARY        **BRADFORD G. MOORE**
    JUDGMENT                                                        ATTORNEY AT LAW
    Page 21 of 22                                                   9 LAKE BELLEVUE DRIVE, #210
                                                                    BELLEVUE, WA 98005
23  c \documents\brad\finnigan\final sj and default brief doc       (425) 453-8161
                                                                    FAX (425) 646-7769
24